Good morning, Your Honors. If it pleases the Court, my name is E. Earl Burke and I have the pleasure of representing Sgt. Richard Houston in this matter. We're here to ask the Court to reverse the trial court in this case on the motion to dismiss as well as the motion for summary judgment. Under the holding in Twombly, Bell Atlanta Corporation v. Twombly, the Supreme Court has set out the standard for a Rule 12b-6 motion to dismiss. And all Sgt. Houston is required to do is to set out a detailed factual allegation that gives the claim and the grounds on which it rests. Under 12b-6, a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff cannot prove any set of facts that would entitle him to relief. Well, that's the old standard. That's the old Connolly v. Gibson standard. That's correct, Judge. The first standard you mentioned, I think, is the client's claims, right? The others went out on summary judgment. Correct. The dismissals, if I remember it correctly, were the negligent supervision, negligent retention, and the intentional infliction of emotional distress. Is that right? That's correct, Judge. Okay. With respect to the two state law claims... Let me ask you this. If the underlying claim for sexual harassment, you lose on that, would you then lose on the negligent supervision and retention? The way? I would submit to the court that no. As long as he pleads sufficient facts to set out the claim for the negligent retention and supervision, then the court could, of course, decide not to exercise jurisdiction over the state law claims. But as it relates to the allegations, the complaint, as long as he makes out those allegations sufficient to state a claim, it wouldn't matter whether or not he stated a claim on the federal statute. But if he loses that claim on the summary judgment issue, then doesn't the negligent supervision and the negligent retention claim go away? Again, the court could exercise jurisdiction and say, or decide not to exercise jurisdiction and dismiss the case. But at the motion to dismiss stage, all Mr. Houston has to do is state enough allegations to set out the elements for cause of action. He doesn't have to prove anything at that point. I understand that. But doesn't the negligent supervision and retention rely on proving that the employee did something wrong? Ultimately, in summary judgment, yes. I would agree with the court that if he couldn't survive summary judgment on the... If McKenzie didn't do something wrong, it doesn't matter, does it? That's correct. Okay. So why don't we focus on the summary judgment? Okay. The district court judge... I'll speak for myself first. I couldn't find one word in the citations, in the testimony, in his complaint, the OPS, and the one before the EEOC, in which there was a claim of sexual or racial discrimination or any kind of discrimination protected by Title VII. And can you spot me to anywhere where those words were used? Say in the first one is in the April 18 employee OPS department. I can't find one word in that entire document, not even the word discrimination, much less discrimination in violation of Title VII, nor could I find it in the one dated 12-24-13. And I couldn't find it in his testimony. I agree, Judge, that... Can you tell us where it's mentioned? Well, it's not specifically mentioned, but I don't think that's the standard. I think the folks... Okay. So what we have is we have a supervisor who's... A bad actor. ...pretty hard nose on him. Correct. And he goes and he complains. And that's a Title VII case? It's a retaliation case, Judge. No, no, no, no, no. You have to retaliate for complaining about something that was protected. He complained about nothing that was protected under Title VII. Well, we would disagree with that, Judge. Okay. That's what I'm looking for. We would disagree. Where in these documents is there any indication that he complained about something that's protected by Title VII? Well, in his OPS complaint, he used... The only place at all in this entire record where he said anything about discrimination is in the EEOC complaint and this is it. I believe I have been discriminated against in retaliation for participation in protected activity in violation of Title VII. That's all. That is all. And I agree with the Court. And there's not a word anywhere else where he complained to anybody that I could find that he was being discriminated against unlawfully in violation of Title VII. Again, the standard is not whether or not Sergeant Houston used specific words, like sexual harassment. Well, the word sex isn't anywhere involved in this record. I agree, Judge. Okay. I agree. I think the focus should be... Well, then what else is there that Title VII protects in this case? Again, Your Honor, the focus should be whether the employee's communication to the employee sufficiently conveys the employee's reasonable concerns that the employer has acted in an unlawful discriminatory manner. Aside from the documents that Judge Joe Flett asked you about, is there any testimony from Sergeant Houston that he told his supervisors about harassment or a hostile work environment in any face-to-face communications or conversations? Sergeant Houston did not use those specific words, Judge. How close did he come is what we're trying to get to. Again, if you look at the SOPs, and it's important for the Court to understand that the Police Department of the City of Atlanta is a paramilitary organization. They use words like standard operating procedure. The City of Atlanta defines harassment very broadly. It doesn't specifically say that it has to be sexual. It says that if an employee perceives that he's being harassed and makes a complaint about that, that is sufficient to... Counsel, this is in his deposition on November the 3rd. This is after he's had a lot of time to think about these things. I'm going to ask you again. This is a question to him. I'm asking one specific question. During your meeting with Captain Gibbs on April 3rd, 2013, did you tell Captain Gibbs that Sergeant McKenzie had made certain sexual comments and advances toward you? Answer, I didn't bring it up. No. Thank you. Paragraph 22 of your complaint about April 8th, you had a meeting with McKenzie, etc., etc. Same answers. When he met with McKenzie and the union representative. As a matter of fact, she was telling him to involve the union representative, wasn't she? That's correct, Judge. Going back... I would have thought the union representative would know how to make a Title VII claim. And I would think so, too, Judge. But again, Sergeant Houston is not a lawyer. The fact that he might have been inartful in articulating the specific complaints that he had against Sergeant McKenzie setting out in his OPS or even talking to his supervisors doesn't preclude him from being protected for opposing the sexual... But part of the claim is you have the defendant has had knowledge of the claim, and if the defendant is not given that knowledge, then there can't be retaliation based on the Title VII activity. You see the disconnect there? I understand, Judge, but there was some... Let me shift to something else. Obviously, there are three factors you have to show. What we've been talking about, that is protective activity, and you have to show that there was adverse action taken against him, right? Correct. And if we assume that the wrong standard was used by the judge, can we then decide on a different reason, for example, lack of causation? Because I'm concerned. It seems to me the only evidence of the argument you make is the temporal proximity between the... if there were protective activity and the retaliatory action. And the cases in this circuit are pretty clear. After a certain period of time, that presumption goes away, and you have to have other evidence. Do you agree with that law? Yes, I do. What other evidence, other than temporal proximity, do you have that there was some retaliation as a result of some protective activity, EEOC filing, for example? Well, if you applied... if the court had applied the right standard, which is not ultimate job decisions... No, I'm assuming that that was the wrong standard and that you prevail on that issue. Going to the next issue, which is causation, where's the evidence other than the temporal proximity that shows there was retaliation? Well, the record doesn't have any evidence that after the EEOC charge, which would certainly account for participating in protective activity. But prior to that, and that goes back to Judge Jordan's question about whether or not it was conduct that violated Title VII that he brought to the attention of his supervisors. And we submit that there was evidence in the record, sufficient, artfully as it may have been, that would have put the City of Atlanta on notice that Sergeant Houston was being harassed by Sergeant McKenzie. And the events that occurred prior to him filing the EEOC, which includes his not being allowed to work the extra job, the scrutiny... But the temporal proximity suggests that there is no causation. So you don't have that... Seems to me the record is such that you don't have that to rely on. What other than the timeliness or untimeliness of it is there to show that there was actual a reaction to his protective activity that resulted in some adverse action? Well, we submit that there was, Judge, that the moment he started complaining, the level of scrutiny she started... Sergeant McKenzie started harassing him, denying his request for sick leave, filing her own OPS complaint against him. And none of that was before, I mean, after the EEOC charge. That's correct. If you assume... You saved some time for a rebuttal. I did, Judge. Take a moment to think about what Judge Huck was asking, because as I think you weren't grasping exactly what he was getting to. He was getting to this. What evidence is there that McKenzie knew about the complaint, other than the fact that you have a time frame? So you can think... Don't answer it now. I understand. Excuse me. I'll say that for a rebuttal. Mr. Clark. Thank you, Your Honors. Good morning. My name is Joan Clark, and I'm a Senior Assistant City Attorney for the City of Atlanta, and I'm here to represent the Appellee City of Atlanta. I ask this Court to affirm the judgment of the District Court granting summary judgment in favor of the City. I'm also here to ask the Court to affirm the judgment of the District Court granting the motion to dismiss in part with respect to the negligent supervision and the intentional infliction of emotional distress claims. Ms. Clark, before you get into your argument, and the Court may not need to reach this issue, but do you think the Magistrate Judge correctly laid out the materiality standard for a retaliation claim? We believe that the Magistrate Judge did not correctly lay out the retaliation standard, and in doing so, the Magistrate Judge analyzed the issue of acts that occurred prior to the filing of the EEOC charge. So the acts that occurred prior to the filing of Mr. Houston's charge were related... No, I'm not asking about a temporal problem. I'm asking about the actual materiality. There's a different materiality standard for a disparate treatment claim than there is for a retaliation claim, right? That is correct, Your Honor. Do you think that the Magistrate Judge correctly laid out the materiality standard for adverse action for a retaliation claim? No, that's correct, Your Honor. The incorrect standard was laid out, but we believe that error was harmless. Got it. Thank you. Okay. Your Honor, this case is about Mr. Houston's failure to report sexual harassment to his employer. Despite multiple opportunities to do so, Mr. Houston failed to tell the City of Atlanta that he was being sexually harassed by his supervisor. This is fatal to his retaliation claim, and this means that any alleged acts that occurred prior to Mr. Houston filing his EEOC charge... Is there anywhere in the record that sexual harassment was used in his testimony? There is nowhere in the record that sexual harassment was used. Mr. Houston used general terms such as harassment and hostile work environment, but at no point did he tell the Office of Professional Standards or any of his supervisors that he was subject to unwanted sexual harassment. There is no record evidence whatsoever that even though, if we assume for purposes of this argument, he subjectively believed that he was opposing an unlawful employment action, the objective reasonableness of that belief when measured against evidentiary record is not supported. And if we look at the evidentiary record, Your Honors, Mr. Houston complained to the Office of Professional Standards in April of 2013 and again in December of 2013, and in those statements, he did not allege that he was being sexually harassed by his supervisor. So at that point, the City of Atlanta had no notice that Mr. Houston was engaging in protected activity. The consequences of Mr. Houston's failure to advise us that he was being sexually harassed is that any of the acts that occurred prior to his filing of the EEOC cannot now be used as a basis for him to allege that he engaged in protected activity. How many times did I do? There is only one record. They had at least one meeting together. That's correct. And I have an impression that she was after him to get the union involved because he was complaining to her. That's correct, Your Honor. There was a meeting with... I mean complaining to her about the way she was treating him, not sexually or anything. Yes, there was a meeting with Major Byron, the union representative, and Sergeant McKenzie that occurred on April 8 of 2013. And when asked whether or not he discussed sexual... and that is on page 131 of Mr. Houston's deposition, the question was, what did you discuss during April 8, 2013? Answer, we discussed a lot of things. Question, did you discuss the sexual advances that Sergeant McKenzie made and the sexual comments she said towards you? Answer, with him, I'm unsure that I brought it up. So the record is clear and appellant cannot present any contrary evidence that allegations of sexual harassment were brought up to the City of Atlanta. And this raises... this moves on to my second point, which is that the district court correctly ruled that Mr. Houston did not suffer a materially adverse actions. After the filing of Mr. Houston's EEOC charge, there were only two acts that occurred. The first act occurred in October of 2014, and that relates to Major Whitmire's denial of Mr. Houston's request to transfer to a different zone. The second act occurred in October of 2016, and that relates to Captain Crayer's transfer of Mr. Houston from the day shift to the evening shift. Neither of those acts, taken individually or collectively, constitutes retaliation. And the reason that they don't constitute retaliation is because there is no causal connection between the alleged acts and the protected activity. If we look at Major... That's different than saying it's not material. Well, even if the court... I understand the causation argument, but I thought you started out by saying that there was no material adverse action. That is correct, Your Honor. And under certain circumstances, the courts, this and this court, has considered a transfer to be considered a materially adverse action. So why not here? It is our position that they're not, because under the retaliation statute, you have to show some injury or harm, and there was no injury or harm to Mr. Houston. But the injury or... I thought we started out by you conceding that the magistrate judge had used the wrong materiality standard for adverse action. That is correct, Your Honor. And... I think that isn't the standard whether on... purely on adverse action, not on causation. Whether or not the action taken is such to dissuade a reasonable person from complaining in the first place? Isn't that the standard? That is the correct standard, Your Honor. And if we're looking at the magistrate judge's opinion, the magistrate judge did not use incorrect standard in dealing with the two actions that occurred after the filing of the EEOC charge. The magistrate judge used the wrong retaliation standard in analyzing actions that occurred prior to Mr. Houston engaging in protected activity. And in the magistrate judge's analysis, the judge opined that the transfer acts that occurred after Mr. Houston engaged in protected activity, there was no... there was no... there was nothing adverse that happened to appellant after he filed the EEOC charge. What does that mean? That he didn't suffer a loss in income? Well, what the judge said, the judge analyzed it based on causation. I know, but you're mixing those things up. Whether or not something is material is legally different, I think, than whether or not there's a causal connection between what the employer did and what resulted. And I apologize, Your Honor, if I'm mixing this up. Unless I'm confused. No, you're not confused. I'm sorry if I'm not being... if I'm not being clear. I do agree that the magistrate judge used incorrect retaliation standard, and I do agree that whether... He used the ultimate result test, which was the wrong test. Yes, that was the wrong test, Your Honor. ...to deter the employee. Yes. And he never did an analysis on that basis. Yes, that's correct, Your Honor. And... You know, you might make a pretty good argument... someone might make a good argument that by denying the night shift and those things would deter the average reasonable employee from making a claim, different than the ultimate result test. Yes, and that's correct. Yes, and that is absolutely correct. And the courts have found that denying someone a transfer request or transferring someone to a different shift could constitute a materially adverse employment action. Under the ultimate result test, but not under the deterrence test. Yes, that's correct, Your Honor. There's the rub, I think, for your case. But you're shifting, as Judge Jordan said, you're shifting into the third element, which is causation. Yes. Let me ask you a little bit about the motion to amend. There was a denial of the right to amend the complaint. What was the justification for that? Typically, the right to amend is freely given, and in this circuit, almost as a matter of course. Yes, Your Honor. I apologize, because I'm... I do recall the... in the... because I don't believe... I believe the judge stated that appellant did not raise any additional facts. One of the facts that he raised in his motion to amend a complaint was this issue of the antelitum notice. And I believe there was an additional fact that he raised. So I believe the court found that there were not substantially additional facts raised in his motion to amend the complaint, and that's why it was denied. But the issue regarding whether or not the court correctly denied his motion to amend, I don't believe that appellant has raised that issue on appeal to this court. And lastly, Your Honor, we do believe that the district court correctly moved to dismiss the state law claims. If we look at the state law claims for negligent supervision, the appellant presented no facts identifying these alleged high-ranking officials who were making decisions to assign, transfer, and intimidate employees. Appellant also presented no facts in his complaint about prior allegations of sexual harassment against Sergeant McKenzie, who is a supervisor, and he presented no facts that his city knew or should have known that employees' tendencies to engage in improper behavior were relevant to the injuries that he ultimately suffered. The facts in the complaint were speculative, and we believe that the court ruled to dismiss those claims. With respect to his last claim, the intentional infliction of emotional distress, the allegations that support that claim were related to the retaliatory actions with respect to the counsel and memos and the OPS complaint that was filed by Sergeant McKenzie and his request for sick leave. None of those actions constitute a type of extreme and outrageous conduct. None of those actions are the type of behavior that's regarded as atrocious and utterly intolerable in society. So we do believe, again, that the district court correctly moved, correctly ruled to dismiss those claims. To the extent that Mr. Houston is arguing that the sexual comments constitute a basis of the intentional infliction of emotional distress, we believe those claims are time-barred, as the sexual comments occurred almost more than two years before he filed this complaint. Thank you, Your Honor. I think we have your case. Excuse me, Your Honor? I think we have your case. Okay, thank you. I appreciate your time. Mr. Burke. Yes. Going back to Judge Huck's question about the proximity in terms of the protected activity, we agree that after the EOC charge was filed, the only issue that came up that could be considered adverse was the refusal to transfer Sergeant Houston. Prior to that, Sergeant Houston engaged in protected activity a couple of ways. He complained directly to his supervisor, McKenzie, rebuffed her sexual advances. He complained to his, her supervisor, following the chain of command, although he didn't use specific words like sexual advances or sexual harassment. The test is whether or not he reasonably believed that what she was doing was also the test, whether or not objectively it would appear to be so. Correct. But there's a, there's a difference. This is what we're trying to get at and trying to understand in this record. There's a difference between saying that you are being nitpicked and harassed. For example, someone's looking at your reports with a fine-tooth comb. Someone's making sure that you don't arrive at work one minute late and, you know, disciplining you for that when others are not being disciplined. And a difference between that sort of stuff and misconduct that occurs on one of the protected grounds under Title VII, whether it's race, gender, religion, sex, etc., it can't be that you can just complain that your supervisor is harassing you generally and that's enough to agree that it's not enough. But he does not, again, under the case law, have to use words, specific words like sexual harassment. I agree with that. But he has to describe the conduct. If he says she's propositioning me for sex and wishes that I would, you know, engage in this activity with her, he doesn't have to use the word sexual harassment or, you know, sexual hostile work environment because the complaint about the conduct is self-defining. But if you don't mention the nature of the problem, how's an employer to know what he's complaining about? Part of the problem in this case, Judge, the SOP says harassment. It doesn't define it or limit it to sexual advances. It simply says if the employee believes he's being harassed. Sergeant Houston used those words in complaining and then immediately after that, a barrage of events started to occur that didn't occur before. And if the court had applied the correct standard, the type of things that Sergeant Houston was subjected to would, in fact, be materially adverse under the Burlington case. But in this instance, the court didn't apply the right standard and going before the EEOC complaint, you have a couple of events that that we submit to the court were adverse. When Sergeant Houston filed his OPS complaint, one of the individuals responsible for investigating the complaint was the boyfriend of Sergeant McKenzie. And for some reason, this complaint mysteriously disappeared. When Sergeant Houston filed a grievance about the fact that his OPS complaint had not been sustained. In the same time period, Sergeant McKenzie opens up her own OPS complaint against Sergeant Houston. And even though they investigated the allegations for one charge, they ended up sustaining it on a different charge when Sergeant Houston never had an opportunity to defend himself for that allegation. And we submit again that if the court had applied the right standard in this case, the conduct that Sergeant Houston was complaining about would be sufficient to satisfy the adverse action test of this case. Thank you, Mr. Burke. Thank you, Judge. We'll keep going. I'm good. Okay. Carroll versus ATA Retail Services.